IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICHAEL L. DEEGAN, | CIVIL ACTION NO. 3:10-CV-00016 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| NICHOLAS RUDMAN, III, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

The *pro se* Plaintiff paid the filing fee and filed the instant complaint seeking, *inter alia*, "to remedy egregious and unconscionable violations of the 4th, 6th, and 14th Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983 Civil Action for Depravation [*sic*] of Constitutional Rights and multiple acts of Illegal Wiretapping U.S.C. 18 § 2511 [*sic*]." The crux of the complaint is that law enforcement officers videotaped Plaintiff in an interrogation room at the Charlottesville Police Department while he conducted a telephone conversation with his criminal defense attorney. The matter is before me now on Defendants'[1] motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which have been briefed and are ripe for disposition.[2] As explained herein, the alleged conduct amounts to a constitutional violation only if the subject is prejudiced in the defense of his criminal case, and Plaintiff

---

[1] Plaintiff names the following Defendants: Nicholas Rudman, III, "*Individually and in his official capacity*"; James Mooney, Jr., "*Individually and in his official capacity*"; and "UNNAMED CITY OF CHARLOTTESVILLE DETECTIVE, *Individually and in his official capacity*." Rudman filed a motion to dismiss (docket no. 6), which Mooney incorporated by reference (docket no. 9).

[2] A hearing on the motions was scheduled; however, I entered an order canceling the hearing because the facts and legal contentions are adequately presented in the material before me, and oral argument would not aid the decisional process.

affirmatively states that he was acquitted in his criminal trial; accordingly, Plaintiff fails to state a claim under the Sixth Amendment, and the other legal theories he asserts have no application under the facts he alleges in his complaint. For these reasons, Defendants' motions to dismiss will be granted, and the complaint will be stricken from the court's active docket.

I.

On January 29, 2008, Plaintiff was arrested in Charlottesville after an altercation with another man at the apartment of a female acquaintance. Plaintiff states that Defendants charged him with malicious wounding, but that he was tried and "acquitted of all charges" on October 23, 2008. Plaintiff adds that, "[o]ther than the fact that he was charged without probable cause to begin with, [he] had no quarrel with the trial itself."

Plaintiff complains that, on April 10, 2008, the day of his preliminary hearing, he learned that, while he "was in custody for questioning in the Charlottesville Police interrogation room" – presumably on January 29 or 30, 2008 – Defendants "had monitored and videotaped his phone conversation to this then attorney." Plaintiff maintains that he had declined to answer a detective's questions and had "specifically requested to speak to his attorney. . . ." Plaintiff contends that Defendants "proceeded to make at least one copy of the illegally obtained illegal video wiretap" and distributed at least "one copy of the feloniously obtained illegal video wiretap to the Charlottesville Commonwealth Attorney's Office." In support of his complaint, Plaintiff submitted a copy of the video (which I have viewed). Plaintiff adds that, at his trial on October 23, 2008, he learned that a detective had informed the alleged victim of Plaintiff's name and had instructed the alleged victim "to use that name" to identify Plaintiff.

The complaint states that Defendants' actions "violated the Federal statute governing Illegal Wiretapping 18 U.S.C. § 2511 [*sic*] and the 4th, 6th, and 14th Amendments of the US

Constitution and state laws. . . ." The complaint enumerates the following four counts: "DELIBERATE INDIFFERENCE" to Plaintiff's "constitutional and civil rights"; violations of Plaintiff's "RIGHT TO PRIVACY"; "OUTRAGEOUS CONDUCT" that was "brutal, demanding and shocking to conscience [*sic*]"; and "INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS." Plaintiff seeks an assortment of damages "for the pain, suffering, emotional distress, humiliation and damages to reputation and livelihood" he has "endured." The *pro se* Plaintiff also seeks costs and "reasonablr [*sic*] attorneys' fees."

## II.

Regarding motions to dismiss, I accept as true the facts alleged in the complaint, applying the pleading standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.[3]

---

[3] I add that, although district courts have a duty to construe *pro se* pleadings liberally, a court is not obliged to ferret through a complaint, searching for viable claims. *See Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (although *pro se* complaint contained potentially viable claims, the court properly dismissed without prejudice under Fed. R. Civ. P. 8 since voluminous, repetitive, and conclusory complaint is not a "short and plain statement" of facts and legal claims; the court specifically observed that dismissal under Rule 8 was proper because such a complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); *see also Spencer v. Hedges*, 838 F.2d 1210 (4th Cir. 1988) (unpublished table decision). In the context of Fed. R. Civ. P. 8, it is clear that a plaintiff must provide enough detail to illuminate the nature of the claim and allow defendants to respond. *See Erickson v.*
(continued...)

## III.

As previously mentioned, the complaint was submitted with a copy of the video, to which Plaintiff refers throughout, and the complaint and Plaintiff's response in opposition to the motions to dismiss were submitted with several attachments, presumably as exhibits in support.[4] When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits attached to the complaint. *Sec'y of State v. Trimble Navigation*

---

[3](...continued)
*Pardus*, 551 U.S. 89, 93-94 (2007). And, although district courts have a duty to construe *pro se* pleadings liberally, a *pro se* plaintiff must nevertheless allege facts that state a cause of action, and district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (adding that "[d]istrict judges are not mind readers"); *see also Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (district court is not the *pro se* plaintiff's advocate, *sua sponte* developing statutory and constitutional claims the plaintiff failed to raise on the face of the complaint); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the *pro se* plaintiff).

[4] In addition to the copy of the video, Plaintiff submitted a copy of a letter from an attorney, Joseph D'Erasmo, to the City Attorney for Charlottesville. Mr. D'Erasmo's letter states that the altercation occurred when the alleged victim "made the mistake of throwing an unprovoked punch at [Plaintiff]. . . . In the process, [the alleged victim] got the worse [*sic*] of the fight. Despite [the alleged victim's] assaultive conduct . . . [Plaintiff] was the one charged . . . with malicious wounding. . . . [Plaintiff] was acquitted of all charges." Mr. D'Erasmo further asserted that

> during the pre-trial discovery process, [Plaintiff's] attorney, Rodney Leffler, learned that while [Plaintiff] was in custody and in the Charlottesville Police interrogation room, his phone call to his then attorney, Benjamin Dick, Esquire, had been monitored and videotaped by the Charlottesville Police on duty and distributed to prosecutors.
>
> He also learned that the police had given witnesses [Plaintiff's] identity (*i.e.*, his name and description) to assist [the alleged victim] in identifying [Plaintiff] in anticipated lineup procedures.
>
> Of more significance are independent reports received by [Plaintiff] that purportedly demonstrate a covert relationship between [the alleged victim] and members of the Charlottesville Police Department that facilitated [Plaintiff's] prosecution.

With his opposition to the motions to dismiss, Plaintiff submitted a copy of a three-page letter, dated August 20, 2008, from Benjamin Dick to Plaintiff; copies of excerpts from the Charlottesville Police Department General Orders, Code of Conduct Guidelines, and Standard Operating Procedures; and what appears to be an excerpt from a legal treatise entitled *Prosecuting Computer Crimes*, including pages 55-75, which is apparently a chapter subtitled "Wiretap Act."

*Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated and remanded on other grounds*, 517 U.S. 1206 (1996). Although as a general rule extrinsic evidence is not considered at the 12(b)(6) stage, when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). Here, the extrinsic evidence has not been submitted by Defendants; rather, it has been submitted by Plaintiff, and is explicitly integral to and referenced by Plaintiff's complaint. Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006); *see also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint). In any event, the extrinsic evidence Plaintiff has submitted merely provides a background for his factual allegations. Accordingly, under the circumstances it is not necessary to convert the instant motions to dismiss into motions for summary judgment.

**IV.**

Plaintiff asserts that the video recording (with audio of his end of the conversation) of his

use of an officer's cell phone to telephone an attorney while he was held in custody in an interrogation room at the Charlottesville Police Department establishes a Sixth Amendment claim based on an invasion of the attorney-client relationship. Plaintiff's submissions in support of his complaint include an excerpt from a "Command Standard Operational Procedure Order," which mandates, as a security and safety measure, "constant monitoring of the arrestee or prisoner," and that "[t]he observation may include video observation." Given these standard operating procedures, and that the interrogation room is outfitted with video and audio monitoring, it is clear that such video and audio monitoring and recording of persons held in the interrogation rooms at the Charlottesville Police Department is routine.

In any event, it is apparent from the video that officers ceased questioning Plaintiff when he invoked his right to counsel, and Plaintiff's end of the conversation with an attorney did not disclose any information that could be used against him. Indeed, Plaintiff affirmatively alleges that he was acquitted of the criminal charge. "[I]t is well settled that some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship." *United States v. Chavez*, 902 F.2d 259, 266 (4th Cir. 1990) (citations omitted); *United States v. Allen*, 491 F.3d 178, 192 (4th Cir. 2007) (quoting *Chavez*); *see also Weatherford v. Bursey*, 429 U.S. 545, 552-59 (1977) (prosecution knowingly permitted undercover agent to attend two meetings between plaintiff and counsel; because no evidence was of prejudice to plaintiff, there was no violation of the Sixth Amendment); *United States v. Jenkins*, 178 F.3d 1287 (4th Cir. 1999) (unpublished table decision), 1999 WL 285910 (no prejudice, and thus no Sixth Amendment claim, because there was no showing that the government derived evidence from a videotape recording in a County Sheriff's office of a private conference between defendant and his attorney). Because Plaintiff does "not allege any prejudice," and there is no

"prejudice clear from the record, there was no Sixth Amendment violation." *Allen*, 491 F.3d at 192; *Lewis v. Casey*, 518 U.S. 343, 349 (1996) (in order to establish a violation of the Sixth Amendment right to counsel, plaintiff must demonstrate that he suffered actual harm); *White v. White*, 886 F.2d 721, 723-724 (4th Cir.1989) (same); *Engel v. Francis*, Civil Action No. 3:09-cv-359, 2010 WL 3894118, at *3 (E.D. Va. October 4, 2010) (county jail policy of monitoring all phone calls, including calls to attorneys, did not establish a Sixth Amendment violation; plaintiff could not plead any actual injury, could mail letters to his attorney, and the complaint did not suggest that he was denied confidential personal visits with his attorney); *United States v. Lentz*, 419 F. Supp. 2d 820, 835 (E.D. Va. 2005) (concluding that regional jail's policy of recording all telephone conversations – to attorneys and non-attorneys alike – did not violate criminal defendant's Sixth Amendment right to counsel).[5]

## V.

Plaintiff asserts that his "right to privacy" was violated, but the allegations refer to a right against unreasonable searches and seizures. Plaintiff complains that he was videotaped while in an interrogation room at the Charlottesville Police Department. His factual allegations do not indicate that, during his time in the interrogation room, he was searched, or seized, or that he was in a place where he possessed a reasonable expectation of privacy. The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." Here, Plaintiff's factual allegations do not suggest that, as a consequence of the interrogation room conduct

---

[5] In a criminal prosecution, the Sixth Amendment right to counsel attaches at the initiation of adversarial judicial proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689-90 (1972). If the conduct about which Plaintiff complains occurred before the initiation of any formal adversarial proceedings, then a Sixth Amendment right to counsel had not yet attached. *See Gouveia*, 467 U.S. at 190 ("[W]e have never held that the right to counsel attaches at the time of arrest."); *accord James v. York County Police Dep't*, 160 F. App'x 126, 132 (3d Cir. 2005), 2005 WL 3313029, at *3.

complained of in the complaint, his person was searched or seized. *See*, *e.g.*, *Ware v. City of James City County*, 652 F. Supp. 2d 693, 704-05 (E.D. Va. 2009) (no valid claim of unreasonable search where no search of plaintiff's person shown, and claim was insufficiently clear for court to address), *aff'd*, 380 Fed. App'x 274 (4th Cir. 2010).

To the extent the complaint could be construed to claim that Plaintiff or the interrogation room were "searched" by virtue of the taping, or that Plaintiff was constructively "seized" thereby, I observe that the interrogation room was in a police station – surely the last place where a person would have an objectively reasonable or legitimate expectation of privacy. *See*, *e.g.*, *Katz v. United States*, 389 U.S. 347, 353 (1967) (a Fourth Amendment claim requires an expectation of privacy); *United States v. Duncan*, 598 F.2d 839, 850 n. 7 (4th Cir. 1979) (citations omitted) (observing no expectation of privacy in a police interrogation room); *see also Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992) ("with the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment"); *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993) (holding that a person lawfully arrested has no expectation of privacy in the back seat of a police car, analogizing the back seat to a jail cell). Under a Fourth Amendment analysis, "to say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument." *Lanza v. State of New York*, 370 U.S. 139, 143 (1962).

> [I]t is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. . . . Though it may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection,[] there is no claimed violation of any such special relationship here.

*Id.* at 143-44 (footnote omitted); *see also id.* at 145 (adding that, as in the instant matter,

"no . . . evidence [from the overheard conversation] was ever introduced in a prosecution against the petitioner"); *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979) (persons lawfully arrested on probable cause and detained lose a right of privacy from routine searches of the cavities of their bodies and their jail cells); *Hudson v. Palmer*, 468 U.S. 517, 526, 528 n. 8 (1984) (no Fourth Amendment expectation of privacy in a prison cell as to searches or seizures, affirming, in *dicta*, 524 at n. 6, principles set forth in *Lanza*).

Plaintiff's allegations indicate no reasonable or legitimate expectation of privacy while he was detained in the interrogation room at the Charlottesville Police Department. Accordingly, his allegations that the videotaping constituted an illegal search and seizure fail to state a claim upon which relief may be granted.

## VI.

Although it is not alleged as a count in the complaint, Plaintiff's factual allegations include a statement that "he was charged without probable cause to begin with. . . ." However, as Plaintiff describes it in his complaint, a "fight broke out when" the alleged victim "through [*sic*] an unprovoked punch at" Plaintiff. The alleged victim "lost the fight and left" the female acquaintance's "apartment on his own." An exhibit attached to the complaint states that the alleged victim "got the worse [*sic*] of the fight." An exhibit attached to Plaintiff's brief in opposition describes the fight as follows: the alleged victim "spontaneously attacked and started a fight with" Plaintiff, who "defended" himself, and the alleged victim "was injured and taken to the hospital." Additionally, the video discloses Plaintiff spontaneously stating (*before* his telephone call to the lawyer) to an officer, "What it looks like is not what it was," an express acknowledgment that Plaintiff was involved in the beating of the alleged victim, and that it appeared that Plaintiff's conduct was criminal. Thus, it is clear that, regardless of eventually

being found not guilty, at the time of his arrest, officers knew the following: Plaintiff had been involved in a fight; an alleged victim was injured by Plaintiff; and it "looked like" a criminal act had taken place. Accordingly, probable cause existed to arrest Plaintiff.

As already observed, the complaint does not allege that Plaintiff's *arrest* violated his rights; the complaint challenges the probable cause for Plaintiff's arrest only in passing. The United States Court of Appeals for the Fourth Circuit has defined probable cause as "facts and circumstances within the officer's knowledge [that] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984); *see also Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). A determination of probable cause is based only on the "facts and circumstances known [to the officer] at the time of the arrest." *Smith v. Tolley*, 960 F. Supp. 977, 994 (E.D. Va. 1997). Here, as already described, Defendants had probable cause to seize Plaintiff; at the very least, Plaintiff's allegations support a finding that a reasonable officer at the scene, "could have believed that he had probable cause to arrest." *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988).

Furthermore, even assuming that the complaint, liberally construed, seeks damages for an illegal seizure, such a claim is untimely. Plaintiff was arrested on January 29, 2008, but the instant complaint was filed more than two years later, on April 9, 2010. Section 1983 actions are governed by the state statute of limitations for general personal injury cases in the state where the alleged violations occur. *Owens v. Okure*, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(a). Therefore, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time when his action accrues. *Id.* The time of accrual of a cause of action

under § 1983 is a federal question. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc); *see also Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091, 1095 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). In *Nasim*, the Fourth Circuit held that a cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* Thus, January 29, 2010, is the very latest date Plaintiff could have timely filed a complaint alleging an illegal seizure (an arrest without probable cause) on January 29, 2008.

## VII.

Plaintiff asserts that Defendants' actions constituted "OUTRAGEOUS CONDUCT" that was "brutal, demanding and shocking to conscience [*sic*]." There is no valid state or federal cause of action denominated as "outrageous conduct," and, to be sure, neither the substance of the allegations[6] nor the videotape suggest any "outrageous conduct" on Defendants' part.[7] In any event, the factual allegations of the "outrageous conduct" count merely repeat allegations from previous counts, invoking the videotaping and asserting as a bald legal conclusion[8] that the

---

[6] It is difficult to comprehend any substance from many of Plaintiff's allegations. As previously noted, n. 3, *supra*, it is Plaintiff's burden to clearly articulate his claim.

[7] In his response in opposition to the motions to dismiss, Plaintiff changes the "outrageous conduct" count to "abuse of process." Plaintiff did not plead "abuse of process" in his complaint, and his filings with the court lack any factual assertions to support a claim of abuse of process. In order to make out a claim for abuse of process, a plaintiff must prove the following: 1) the existence of an ulterior purpose; and 2) an action in the use of process that would not be proper in regular prosecution. *Triangle Auto Auction, Inc. v. Cash*, 238 Va. 183, 184 (1989). Plaintiff does not allege facts to support a claim of "an action in the use of process that would not be proper in regular prosecution," and he has not alleged that Defendants had any ulterior purpose in arresting him and bringing charges against him. Accordingly, he fails to present the court with any claim of abuse of process that is "plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

[8] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009), and a plaintiff can not satisfy
(continued...)

equal protection clause of the Fourteenth Amendment applies. To the extent Plaintiff asserts an equal protection claim, he has not asserted wrongful discrimination on the basis of race, gender, or any other prohibited classification that would support such a claim. *See, e.g.*, *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

## VIII.

Plaintiff alleges a state law tort claim of intentional infliction of emotional distress.[9] Plaintiff's factual allegations are that his conversation was videotaped, and that the videotape was copied and distributed "to the Charlottesville Commonwealth Attorney's Office." To state a claim for intentional infliction of emotional distress under Virginia law, a plaintiff must allege that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Russo v. White*, 241 Va. 23, 28 (1991). With respect to the second element of this tort, liability is imposed "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. Plaintiff's allegations do not describe such conduct, and therefore fail to state a claim of intentional infliction of emotional distress. Plaintiff has not alleged any resulting emotional distress, and the allegations fail to

---

[8](...continued)
pleading requirements with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555 (citations omitted).

[9] I have the discretion to dismiss without prejudice any pendent state claims once the federal claims are dismissed. 28 U.S.C. § 1367(c)(3). However, I find it appropriate to rule on them, given the current posture of the case, and given also that judicial economy would not be served by further litigation in state court. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

state a claim for that reason, too.[10] *Id*. at 27 ("liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it").

## IX.

The complaint enumerates no count invoking the so-called "wiretap" statute, but there are paragraphs in the allegations of the complaint referring to 18 U.S.C. § 2511. Liberally construed, Plaintiff contends that this statute was violated by the routine placement of a video camera to monitor and record conversations in a police department interrogation room, which captured the audio of Plaintiff's end of a conversation (during which Plaintiff used a police officer's cell phone) with an attorney.

On the basis of these contentions, Plaintiff seeks redress through Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), which is codified as 18 U.S.C. §§ 2510 *et seq.*, and which affords a civil remedy to those who have suffered injury because of an illegal resort to electronic surveillance. Title III prohibits the willful use of any electronic, mechanical, or other surveillance device to intercept oral communications.[11] 18 U.S.C. § 2511(1)(b). However, any equipment or facility in use by an investigative agency or law enforcement, in the ordinary course of duties, is excepted from the definition of electronic, mechanical, or other surveillance device. 18 U.S.C. § 2510(5)(a); *United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002); *Abraham v. County of Greenville*, 237 F.3d 386, 388 (4th Cir. 2001); *United States v.*

---

[10] Even assuming Plaintiff could put forth sufficient allegations of intentional infliction of emotional distress, any claims arising out of his arrest and interrogation on January 29 or 30, 2008, are untimely, as previously discussed.

[11] Because the complaint alleges only a recording of Plaintiff's end of the conversation, only an "oral communication" was recorded, and Plaintiff's end of the conversation was not, for purposes of Title III, a "wire communication" that was "intercepted." *Siripongs v. Calderon*, 35 F.3d 1308, 1320 (1994); *United States v. McLeod*, 493 F.2d 1186, 1188 (7th Cir. 1974); *United States v. Carroll*, 332 F. Supp. 1299, 1301 (D. D.C. 1971).

*Rivera*, 292 F. Supp. 2d 838, 842 (E.D. Va. 2003). As previously discussed, it is routine procedure, as a safety and security matter, to monitor and record the occupants of the interrogation rooms at the Charlottesville Police Department, and thus the equipment used to make these recordings falls within the law enforcement exception found in 18 U.S.C. § 2510(5)(a).[12]

For these reasons, Plaintiff's allegations that Title III was violated fail to state a claim upon which relief may be granted.

## X.

Plaintiff alleges that Defendants' conduct demonstrated "DELIBERATE INDIFFERENCE" to Plaintiff's "constitutional and civil rights." The theory of liability for

---

[12] Additionally, as already discussed, Plaintiff had no reasonable or legitimate expectation of privacy in the police station (or, for that matter, in the borrowed cell phone). Plaintiff alleges that he was under arrest, being held in a police station. It should be safe to assume that his person had been searched before he was left alone in the interrogation room (as required by the Charlottesville Police Department's operating procedures submitted by Plaintiff). The context is that Plaintiff understood his rights and wanted to speak with an attorney, and he used a police officer's cell phone to call an attorney.
  The statute defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). Accordingly, Plaintiff's end of the conversation as overheard and recorded in the interrogation room does not qualify as an "oral communication" for purposes of Title III. *See*, *e.g.*, *Roller v. McKellar*, 711 F. Supp. 272, 281 (D. S.C. 1989) (citing 18 U.S.C. § 2510(2), "this court notes that neither Title III . . . nor the Fourth Amendment protects parties to an intercepted conversation who speak with no legitimate expectation of privacy"); *United States v. Larios*, 593 F.3d 82, 92 (1st Cir. 2010) (legislative history shows that Congress intended the definition of "oral communication" to parallel the "reasonable expectation of privacy" test articulated in *Katz v. U.S.*, 389 U.S. 347, 360 (1986)); *United States v. Peoples*, 250 F.3d 630, 637 (8th Cir. 2001) ("[b]efore the interception of a conversation can be found to constitute a search under the Fourth Amendment or an 'oral communication' under the federal wiretap law, . . . the individuals involved must show that they had a reasonable expectation of privacy in that conversation"); *United States v. Turner*, 209 F.3d 1198, 1200 (10th Cir. 2000) (definition of oral communication to parallel the reasonable expectation of privacy test set forth in *Katz*); *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993) (same); *Siripongs v. Calderon*, 35 F.3d 1308, 1320 (9th Cir. 1994) (reasonable expectation of privacy); *United States v. Pui Kan Lam*, 483 F.2d 1202, 1206 (2d Cir. 1973) (definition of "oral communication" tracks *Katz*); *Kee v. City of Rowlett*, 247 F.3d 206, 211 n. 8 (5th Cir. 2001) ("[t]he legislative history of this section demonstrates that Congress intended this definition of oral communication to parallel the reasonable expectation of privacy test set out in" *Katz*); *Angel v. Williams*, 12 F.3d 786, 790 (8th Cir. 1993) (police officers had no expectation of privacy in communications with prisoner in public jail).

"deliberate indifference" under 42 U.S.C. § 1983 arises when a claimant seeks to hold a municipality liable for pervasive misconduct after having received notice of such misconduct; or when government officials have a policy of failing to adequately train government employees; or when jail or prison medical personnel are deliberately indifferent to a serious medical condition. *See*, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, ___, 129 S. Ct. 788, 797 (2009); *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 290 (1998); *Waybright v. Frederick County*, 528 F.3d 199, 206 (4th Cir. 2008); *Short v. Smoot*, 436 F.3d 422, 427-30 (4th Cir. 2006); *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001); *Brown v. Harris*, 240 F.3d 383, 388-91 (4th Cir. 2001). In sum, "deliberate indifference" is a standard of fault that has no application to Plaintiff's allegations, which fail to state a claim upon which relief can be granted.[13]

## XI.

In his brief in opposition to the motions to dismiss, Plaintiff adds a discussion of "malicious persecution [*sic*]," a claim that was not asserted in his complaint. There is no independent cause of action for malicious prosecution under § 1983; rather, a plaintiff must allege a claim founded on a Fourth Amendment seizure. *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). As previously discussed, Plaintiff fails to state such a claim. To the extent such

---

[13] In his response in opposition to the motions to dismiss, Plaintiff changes the name of the "deliberate indifference" count to "deliberately eliciting," asserting that a "deliberate elicitation" occurred when the videotape was made. In support of his claim, Plaintiff cites to *Kirby v. Illinois*, 406 U.S. 682 (1972). However, *Kirby* upheld a criminal conviction against a challenge that the defendant was entitled to representation at a "showup" before indictment, 406 U.S. at 689-90, and is not pertinent to any of the issues in this case. As for "deliberate elicitation," *Massiah v. U.S.*, 377 U.S. 201 (1964) and its progeny hold that a criminal defendant's Sixth Amendment right to counsel is violated when incriminating statements are admitted against the defendant at trial if (i) a government agent (ii) "deliberately elicited" those statements from the defendant after indictment and outside the presence of counsel. *Id*. at 206; *see also United States v. Love*, 134 F.3d 595, 604 (4th Cir. 1995). The allegations do not suggest that any incriminating statements were "deliberately elicited" from Plaintiff.

a claim can be brought under state tort law, a plaintiff must likewise prove, *inter alia*, that his prosecution was brought without probable cause. *Hudson v. Lanier*, 255 Va. 330, 333 (1998). Again, Plaintiff's allegations indicate that the prosecution was founded on probable cause. Additionally, a state tort law claim of malicious prosecution requires that the prosecution be "malicious." *Id*. Malice, in this context, is defined as "any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Id*. In sum, Plaintiff has not alleged facts to support a claim of malicious prosecution. *See, e.g.*, *Reilly v. Shepherd*, 273 Va. 728, 733-34 (2007). Accordingly, he fails to present the court with any claim of malicious prosecution that is "plausible on its face." *Twombly*, 550 U.S. at 570.

## XII.

As heretofore explained, I will grant Defendants' motions to dismiss for failure to state a claim on which relief may be granted.

The Clerk of the Court will be directed to send a certified copy of this memorandum opinion and the accompanying order to the *pro se* Plaintiff and to all counsel of record.

Entered this 26th day of January, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE